## J. M. Delph *v.* A. B. Hewitt, et al.

**Judicial Sale of Real Estate—Descriptions Given in Advertisement.**

One buying real estate at judicial sale is not bound to inspect the premises, but has a right to rely upon the accuracy and truthfulness of the description which is given by the judgment and the master's advertisement, and he cannot be compelled to accept a conveyance unless it conforms substantially to the description by which he was induced to bid.

Opinion by Judge Lindsay:

Lot No. 2 is described in the judgment of the court as "lot No. 2, having a front on Waters street of sixteen feet, eight inches, extending back the same width fifty-one feet, to vacant space marked on said plat of division." The judgment further provides that "the center of the walls of the houses as they stand on said property is the dividing line between the said lots and improvements. And the area marked 'vacant space' on the said map being 16 1-3 feet by 20 feet, is to be common appendage to lots Nos. 1, 2, 3, 4, 5 and 6." The marshal, in his advertisement of the time, place and terms of sale, describes the property to be sold precisely as it is described in the judgment. J. M. Delph, who became the purchaser of lot No. 2, excepted to the confirmation of the marshal's report upon various grounds, among them, "that the property is heavily encumbered with taxes due to the state of Kentucky, and to the city of Louisville, * * * and neither the state of Kentucky nor the city of Louisville is a party to this action or bound by the decree herein; and that the property so sold is not such as it was represented at said sale to be, and as it is described in the decree herein; that there is no vacant space such as represented on the plat according to which said sale was made; that a large portion of said space is occupied by privies used by the occupants of the other lots shown on said plat, and the use of said space is not free or common to the lots, 1, 2, 3, 4, 5 and 6, and said privies are a nuisance to said lot No. 2, and the occupants thereof, and greatly diminish the value of said lot." At the time of said sale, the said Delph believed that said property was such as it was represented to be, and that said space was vacant and free to the use of lot No. 2; and if he had known the true condition of same he would not have bid at said sale.

The chancellor ought to have caused the encumbrances growing out of the existence of the tax claims of the state and city to be removed by appellees before compelling Delph to accept a conveyance. Upon the trial of the exception last stated, it was agreed that Delph had not examined the property, and it seems that he was not apprised, at the time of the sale, of the purposes to which the vacant space had been devoted. He was not bound to inspect the premises. He had the right to rely upon the accuracy and truthfulness of the

description, which appellees, through their own judgment and through the master's advertisement, gave of the property; and he cannot be compelled to accept a conveyance and pay for the lot unless it conforms substantially to the description by which appellees induced him to bid.

It is in proof that the space described in the judgment and advertisement as vacant is occupied by privies used by the occupants of the other houses and lots, to which it is an appendage; that the house on lot No. 2 has no other avenue than said "space" through which to receive light and air, in the rear; that the privies render the air supplied by way of said space offensive and impure; and that the existence of the privies depreciates the value of lot No. 2 about five hundred dollars, or about one-third of the price agreed to be paid for it. It is certain that in a transaction between individuals disconnected from a proceeding in court, a purchase of this character would not be enforced. If appellees can have a specific execution of the contract made with the chancellor for their benefit, they will thereby succeed in compelling Delph not only to accept and pay for property, differing in a material particular from that sold to him, but of greatly less value.

They can obtain no such an unconscientious advantage through the instrumentality of a court of equity. The judgment of the chancellor confirming the report of the sale to Delph is *reversed,* and the cause remanded with instructions to sustain his exceptions, and for further proper proceedings.

*Muir & Booth, for appellant. James Harrison, for appellees.*